## HUNTER v. ISENHOWER.

### No. 3073.

Court of Civil Appeals of Texas.

Eastland.

Feb. 12, 1954.

694

John P. Camp, McMahon, Springer, Smart & Walter, Abilene, for appellant.

Beverly Tarpley, Scarborough, Yates, Scarborough & Black, Abilene, for appellee.

LONG, Justice.

In August, 1952, J. Marvin Hunter, Jr., sold to Charles Isenhower a newspaper known as the Baird Star, located at Baird, Callahan County, Texas, for a consideration of $40,000 of which $15,000 was paid in cash and the balance evidenced by a promissory note in the sum of $25,000. Isenhower brought this suit in the District Court of Callahan County against Hunter for a recision of said sale or, in the alternative, that the court reduce the note given by Isenhower to Hunter from $25,000 to $10,000. Hunter filed a plea of privilege to be sued in Dallas County, the county of his residence. Isenhower controverted said plea and sought to hold venue in Callahan County under Subdivision 7 of Article 1995, Vernon's Annotated Revised Civil Statutes. Upon a hearing, the trial court overruled the plea of privilege and Hunter has appealed.

Upon the trial, appellee offered proof tending to show misrepresentations by appellant made in Callahan County, upon which he relied at the time he purchased the newspaper in the following particulars: (1) amount of circulation of the newspaper; (2) amount of commercial or "job" printing done by appellant; (3) rate charged by appellant for advertising in the newspaper.

■ By his points of error, appellant contends that there is no evidence, or at least insufficient evidence, to show that any representations made by him were false. The evidence discloses that Isenhower and Hunter were close friends; that they had been friends for a number of years. Hunter was engaged in operating the Baird Star at Baird. Isenhower was not a newspaper man. The negotiations leading to the consummation of the sale of the newspaper by Hunter to Isenhower began about the first of August, 1952. The sale was thereafter consummated and Isenhower took possession of the newspaper plant on September 1, 1952. Isenhower testified that Hunter represented to him at the time of the negotiations that he had a paid circulation of 2,000 subscribers. Isenhower further testified that when he took possession of the paper on September 1, 1952, that the paid circulation of the paper was only 950. We believe this evidence is sufficient to support the implied finding of the trial court that Hunter represented to Isenhower that he had a paid circulation of 2,000 and that such representations were false. It is true that there is no direct evidence as to the amount of the paid circulation at the time the negotiations were begun in August, 1952, but we believe the evidence that there were only 950 paid subscribers on September 1, 1952 is sufficient to support the finding of the trial court that there were not 2,000 paid subscribers at the time the representation was made by Hunter. Hunter did not testify and did not offer any evidence. There is nothing in the record to explain the sudden drop of the paid subscribers from 2,000 to 950 within a few days. The evidence unexplained and not refuted in any way, we believe is sufficient to and we, therefore, overrule the contention that the

evidence does not sustain the finding of the trial court. Moore v. Hayes, Tex.Civ.App., 144 S.W.2d 373; Collins v. Chipman, 41 Tex.Civ.App. 563, 95 S.W. 666.

■ As to the representations concerning the amount of job printing and the rate charged therefor, we believe the findings of the trial court that the representations relative thereto were false are based, in part, upon hearsay evidence and cannot be sustained. However, a finding of the trial court on the representation with reference to the circulation of the paper is sufficient to support the judgment.

The judgment of the trial court is affirmed.